UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JEFFREY BELTON,

              Plaintiff,

     -against-

NIKOLAS BUDIMLIC, RICK WILEY,

             Defendants.
--------------------------------------------------------x
DEARIE, District Judge.

**MEMORANDUM & ORDER**
**CV 99-6959 (RJD)**

Plaintiff Jeffrey Belton filed this action pro se on October 27, 1999 under 42 U.S.C. § 1983 against defendants, police officers Nikolas Budimlic and Rick Wiley, alleging that he was subject to excessive force, false arrest, and malicious prosecution. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56 arguing that plaintiff's Fourth Amendment, false arrest, and excessive force claims are time-barred; that plaintiff's malicious prosecution claim fails on the merits; and that the individually named defendants are entitled to qualified immunity. The motion is unopposed. For the reasons discussed below, defendants' motion is granted in its entirety.

## BACKGROUND

Plaintiff's mother, Anne Belton, placed a call to 911 shortly after 6:00 P.M. on December 14, 1995 because plaintiff was threatening to commit suicide. See Exhibit B attached to the Bruzzese Declaration, Deposition of Anne Belton, 29-30. Ms. Belton informed the 911 operator that plaintiff, a psychiatric patient,  was "going crazy," and that he had been hospitalized the week before. See id. at 39. After Ms. Belton hung up the phone, she observed plaintiff throwing

things around the apartment and knocking down chairs. In an effort to get plaintiff to stop this behavior, Ms. Belton jumped on his back and started beating him and pulling on him. At some point plaintiff grabbed a kitchen knife and threatened to "kill himself." Id. at 39-42, 49-50.

Telephone records indicate that at 6:13 P.M., a female caller requesting assistance placed a call to 911 from plaintiff's apartment. At approximately the same time, the police operator transmitted a 10-52, which is a family dispute, at 1589 President Street, plaintiff's apartment. See Defendant's Rule 56.1 Statement ¶ 9; see also Exhibit C annexed to Bruzzese Declaration, Sprint Phone Records. At 6:21 P.M., another 911 call was made from the plaintiff's apartment, in which a male caller informed the 911 operator that the plaintiff had a knife. At 6:23 P.M., the police operator was informed that there was an altercation between two brothers at 1589 President Street which involved a stabbing. The operator then upgraded the previous 10-52 at 1589 President Street to a stabbing. See Def. Rule 56.1 Statement ¶¶ 10-12; see also Ex.C.

At approximately 6:24, a male caller placed a third 911 call, informing the operator that the "perpetrator" had stabbed him and that the "perpetrator" was going on a rampage. At 6:25 P.M., a male caller made yet another 911 call informing the operator that the 30 year old male had a mental history and that he overdosed on drugs. See Defendant's Rule 56.1 Statement ¶¶ 13-15; see also Ex. C annexed to Bruzzese Declaration.

Defendants, Officers Nicholas Budimlic and Rick Wiley, responded to the 911 calls. Upon arriving at 1589 President Street, the officers met plaintiff's brother, Darryl Belton, who escorted the officers up to plaintiff's apartment. See Exhibit D attached to Bruzzese Declaration Grand Jury Testimony of Nicholas Budimlic, at 5, 19. The defendants identified themselves as police officers and Darryl Belton knocked on plaintiff's door. See Def. Ex. D at 20. Plaintiff

opened the apartment door with a knife in his hand, and the defendant officers ordered him to drop the knife. See Exhibit E annexed to Bruzzese Declaration, Deposition of Jeffrey Belton, at 28.

Plaintiff claims that he dropped the knife in his hand, and was subsequently "pistol-whipped" and sprayed with mase by the officers. See id. at 28, 38; Complaint ¶ 10. Plaintiff further alleges that after he was arrested and placed in the police vehicle, he was struck in the head with a blunt object by the officers. See Complaint ¶ 12. Plaintiff testified that he suffered injuries on his forehead as a result of the police beating him. See Def. Ex. E. at 38.

In contrast to plaintiff's assertions, the defendant officers testified that plaintiff did not drop the knife when the officers directed him to do so. See Def. Ex. D at 9, 22. Rather, Officer Budimlic testified that when he ordered plaintiff to drop the knife, plaintiff responded, "you'll have to shoot me." Id. at 22. A struggle then ensued in which the officers tried to gain control of the knife. During the altercation, Officer Budimlic dropped his pistol, which plaintiff picked up and used to hit Officer Wiley. Id. at 11-12. The officers called for back-up and the plaintiff was eventually subdued. Id. at 13. Officer Budimlic suffered a broken right hand and was out of duty for just under two months. Officer Wiley sustained a fractured left wrist and was out of work for approximately one month. Id. at 13, 26.

Plaintiff was subsequently charged with two counts of Assault in the Second Degree, one count of Criminal Possession of a Weapon in the Fourth Degree, one count of Criminal Possession of a Weapon in the Third Degree, and one count of Criminal Possession of a Weapon in the Second Degree. See Exhibit H attached to Bruzzese Declaration, Kings County Criminal Complaint. On or about February 23, 1996, a Grand Jury returned a True Bill charging plaintiff

3

with one count of Assault in the First Degree, two counts of Assault in the Second Degree, one count of Criminal Possession of a Weapon in the Fourth Degree, and two counts of Menacing in the Second Degree. See Exhibit I attached to the Bruzzese Declaration, Indictment. On February 13, 1997, a jury acquitted plaintiff of all charges. See Exhibit J attached to Bruzzese Declaration, Certificate of Disposition.

On October 27, 1999, plaintiff filed his complaint with this Court's Pro Se Office alleging that the defendants deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. Defendants served and filed the instant motion for summary judgment on February 19, 2003. Pursuant to Local Rule 56.2, attached to the motion was a "Notice to Pro Se Litigants Opposing Motion for Summary Judgment." The notice informs plaintiff that he cannot oppose the summary judgment motion by simply relying upon the allegations in his complaint, and it further cautions that if he fails to submit affidavits or other documentary evidence in opposition to the motion, such failure could result in an entry of summary judgment against him. To date plaintiff has not responded to defendants' motion, nor has plaintiff requested an extension of time to do so.

## DISCUSSION

A.    *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). While the moving party bears the initial burden of showing that there are "no genuine issues of material fact," once such a showing is made, "the non-movant

4

must 'set forth specifics facts showing that there is a genuine issue for trial.'" Weinstock v.

Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

     In determining whether there are genuine issues of material fact, the court must view the

evidence "in the light most favorable" to the non-moving party.  Anderson, 477 U.S. at 255.

Moreover, when summary judgment is opposed by a pro se plaintiff, the Court must "read [the

pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments

that they suggest."  Burke v. Royal Insurance Co., 39 F.Supp.2d 251, 257 (E.D.N.Y. 1999)

(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994), reh'g granted on other grounds, 914

F.Supp. 1004 (S.D.N.Y.1996)); see also Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir.1988)

(noting that "special solicitude should be afforded pro se litigants generally, when confronted

with motions for summary judgment").

     Nevertheless, "conclusory statements, conjecture, or speculation by the party resisting the

motion will not defeat summary judgment."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.

1996). Indeed, even a pro se plaintiff's "bald assertion, made without evidentiary support...is not

sufficient to overcome a motion for summary judgment."  Burke, 39 F.Supp.2d at 257, quoting

Lee, 902 F.Supp. at 429.  To defeat a motion for summary judgment, a pro se plaintiff, like any

other non-moving party, must submit "admissible evidence sufficient to support a finding in her

favor..."  Fitzgerald v. Henderson, 251 F.3d 345, 361, (2d Cir. 2001); see Fed. R. Civ. P. 56(e).

Such evidence can come in the form of "affidavits... made on personal knowledge" or

"depositions, answers to interrogatories, or further affidavits."  Fed. R. Civ. P. 56(e).  Moreover,

Rule 56(e) holds that:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Rule 56(e).

Plaintiff has failed to submit papers in opposition to defendants' summary judgment motion. When non-movant pro se plaintiffs, like Belton, fail to file opposition papers, "summary judgment may be granted as long as the Court is satisfied that the undisputed facts 'show that the moving party is entitled to judgment as a matter of law,' and the plaintiff has received notice that failure to submit evidence in opposition may result in the dismissal of his case." Blackett v. Pathmark Stores, Inc., No. 01-6913, 2002 WL 31385817, at * 2 (S.D.N.Y. Oct. 21, 2002) (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)).

As discussed above, plaintiff did receive notice that failure to submit evidence may result in the dismissal of his case. The inquiry, however, does not end there. "Even in the presence of notice, 'the issue in each case is whether from all of the circumstances...it is reasonably apparent that the litigant understood the nature of the adversary's summary judgment motion and the consequences of not properly opposing it.' " Id. (quoting Sawyer v. Am. Fed'n of Gov't Employees, 180 F.3d 31, 35 (2d Cir. 1999)).

Based upon a review of plaintiff's involvement in this litigation, it is "reasonably apparent" that he understood his obligation to respond. Although plaintiff did not attend all of the conferences, he did attend several of the scheduling conferences. Plaintiff also brought a motion to strike one of the defendants' affirmative defenses and made several inquiries to the

6

Court regarding the status of that motion.  Furthermore, the notice that defendants sent to plaintiff informing him of his obligation to respond is almost identical to notices that have been upheld in this Circuit.  See, e.g., Champion, 76 F.3d at 485-86; Blackett, 2002 WL 31385817, at * 2.

B.      *Timeliness of Plaintiff's Excessive Force and False Arrest Claims*

The applicable statute of limitations for section 1983 actions is found in "the general or residual [state] statute [of limitations] for personal injury actions."  Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2001) (quoting Owens v. Okure, 488 U.S. 235, 249-50) (1989)).  Thus in New York, the applicable statute of limitations for civil rights claims under § 1983 is three years.  See N.Y. C.P.L.R. 214(5) (McKinney 1990); Singleton v. City of New York, 632 F.2d 185, 189 (2d Cir. 1980).  Although state law provides the statute of limitations, federal law determines when federal civil rights claims accrue.  Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999).  Generally, a section 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Pearl, 296 F.3d at 80.

1.      *Plaintiff's Excessive Force Claims*

Defendants maintain that plaintiff's excessive force claims are time-barred.  Plaintiff's excessive force claims accrued on December 14, 1995, the date he was subjected to the allegedly excessive force.  Therefore, because plaintiff did not file his complaint until October 27, 1999, almost one year after the statute of limitations expired, his excessive force claims are time-barred.

2.      *Plaintiff's False Arrest Claim*

In addition to plaintiff's excessive force claims, defendants argue that plaintiff's false

arrest claim is time-barred as well. Defendants contend that plaintiff's false arrest claim accrued on December 14, 1995, the date he was arrested, and thus more than three years elapsed before plaintiff filed his complaint.

Although section 1983 claims generally accrue when the plaintiff knows or has reason to know of a cognizable harm, false arrest claims are subject to a different analysis. See Covington 171 F.3d at 119. "[T]he determination of the accrual date [for false arrest claims] depends on whether a judgment in a petitioner's favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against [him/her]." Rueda v. City of New York, No. 01-2819, 2003 WL 21143084, at *3 (E.D.N.Y. Feb. 20, 2003) (internal quotations and citations omitted). Thus, if a plaintiff can demonstrate that a false arrest would be necessary to obtain a conviction against him, a Section 1983 false arrest claim does not accrue until such a conviction is no longer a possibility. See Covington, 171 F.3d at 124; see also Pugh v. City of New York, No. 01-0129, 2002 WL 398804, at * 2 (E.D.N.Y. January 12, 2002) (noting that generally, where an allegedly false arrest does not result in the initiation of a criminal prosecution, the claim accrues on the date of the arrest).

Plaintiff was arrested on December 14, 1995 and charged with several counts of assault and criminal possession of a weapon. A jury acquitted plaintiff of all charges on February 13, 1997. At the time of plaintiff's arrest, the police seized some of plaintiff's property, including a knife. See Exhibit F annexed to Bruzzese Aff.(listing property that was taken from defendant's apartment at the time of the arrest). The record, however, sheds no light on the import of the seized evidence to the prosecution's case. As discussed above, the accrual date for a false arrest claim depends on whether the prosecution could have obtained a conviction without using the

8

tainted evidence. If the prosecution could have obtained such a conviction, then plaintiff's false

arrest claim would have accrued on December 14, 1995, and his claim would be time-barred. In

contrast, if the seized evidence was key to a conviction in the criminal proceeding, then plaintiff

would have satisfied the statute of limitations because his claim would not have accrued until

February 13, 1997, when plaintiff was acquitted of all charges. Because the Court lacks this

critical information regarding the import of the seized evidence, the Court is unable to determine

the accrual date of the false arrest claim. See Wang v. United States, No. 01-1326, 2001 WL

1297793, at*7 (S.D.N.Y. Oct. 25, 2001) (denying motion to dismiss false arrest claim where the

record did not reveal why the case was dismissed or shed light on what if any evidence was

seized at the time of the arrests or the importance of such evidence to the prosecution's case).

Thus, to the extent that defendants' summary judgment motion is based upon the untimeliness of

plaintiff's false arrest claim, it is denied.

C.     *Probable Cause for Arrest*

Even if plaintiff's false arrest claim was timely, it should nevertheless be denied because

the defendants had probable cause to arrest the plaintiff. Under New York law, in order to make

out a claim of false arrest, the plaintiff must demonstrate that: "(1) the defendant intended to

confine the plaintiff, (2)the plaintiff was conscious of the confinement, (3) the plaintiff did not

consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v.

City of New York, 331 F.3d 63, 75 (2d Cir. 2003); see also Hygh v. Jacobs, 961 F.2d 359, 366

(2d Cir. 1992) (noting that the elements of a claim for false arrest under section 1983 are

"substantially similar" to the elements of such a claim under New York law). A showing of

probable cause, however, defeats a federal civil rights claim of false arrest. See Singer v. Fulton

9

County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). The question of whether probable cause to arrest existed may be resolved on summary judgment "if there is no dispute as to the pertinent events and knowledge of the officers." Id.

Here, drawing all inferences in favor of plaintiff, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), no genuine issues of material fact remain regarding the appropriateness of plaintiff's arrest. The defendant police officers arrived at plaintiff's apartment in response to several 911 calls. The 911 telephone records indicate that the original 911 call from plaintiff's mother was coded as a 10-52, a family dispute. The call, however, was upgraded to a stabbing, after the 911 operator received a phone call in which a male caller indicated that plaintiff had a knife and had stabbed the caller. Furthermore, plaintiff himself acknowledges that when the police officers entered his apartment, he had a knife in his hand. See Ex. E at 28. The 911 calls, coupled with plaintiff's possession of a knife, are sufficient to establish probable cause. Accordingly, because the defendant officers had probable cause to arrest plaintiff, plaintiff's false arrest claim must fail.

D.     *Malicious Prosecution Claim*

Defendants maintain that plaintiff's malicious prosecution claim should be denied because it fails on the merits. In order to state a section 1983 claim of malicious prosecution, a plaintiff must demonstrate tortious conduct by the defendant which resulted in a constitutionally cognizable deprivation of liberty. See Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003).

10

Under New York law, to state a claim for malicious prosecution, the plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in plaintiff's favor; (3) that there was no probable cause to believe that plaintiff committed the crime; and (4) that the proceeding was commenced with malice. Id. Hence, similar to false arrest claims, a showing of probable cause defeats a malicious prosecution claim as well. See Colon v. City of New York, 60 N.Y.2d 78, 82 (1983).

In the context of malicious prosecution, probable cause "has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). Under New York law, "indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police misconduct undertaken in bad faith." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis in original) (internal quotations omitted). The plaintiff bears the burden of proof in rebutting the presumption of probable cause that arises from an indictment. Id. at 73. Plaintiff has not submitted any evidence, let alone evidence sufficient to rebut the presumption of probable cause that arises from an indictment. Accordingly, defendants are entitled to summary judgment on plaintiff's malicious prosecution claim as well.

E.      *Qualified Immunity*

Defendants contend that they are entitled to qualified immunity. "[U]nder the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to know believe that his conduct did

11

not violate plaintiff' rights." Id. at 71.

The probable cause analysis employed in false arrest and malicious prosecution claims also answers questions of qualified immunity. See Boyd, 336 F.3d at 75, fn.5 (citing Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)). Since the Court has found that no genuine issues of material fact remain as to probable cause, the defendants are entitled to qualified immunity.

CONCLUSION

For the reasons stated above, defendants' summary judgment motion is granted in its entirety.

Dated: Brooklyn, New York
January /5, 2004

　　　　　　　　　　　　　　　　RAYMOND J. DEARIE
　　　　　　　　　　　　　　　　United States District Judge